UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | Case No. 3:19cv249 |
| v.     ) | |
| ) | |
| HEIRS AND DEVISEES OF JUDITH K.     ) | |
| PIFER, DECEASED a/k/a JUDITH K.     ) | |
| PIFER, DECEASED     ) | |
| ) | |
| Defendants.     ) | |

## COMPLAINT

Comes now Plaintiff United States of America, by counsel, for and on behalf of its agency, U.S. Department of Agriculture (USDA), and for its cause of action alleges the following:

## JURISDICTION

1.    This Court has jurisdiction pursuant to 28 U.S.C. Section 1345 and venue is proper.

## COUNT ONE
### (Default on Promissory Note)

2.    On or about January 22, 2007, Judith K. Pifer, Deceased executed and delivered to Plaintiff a promissory note ("Note") in the amount of $40,319.00.   A copy of said note is attached hereto as "Exhibit 1."

3.     To secure payment of said promissory note Judith K. Pifer, Deceased executed and delivered to Plaintiff a purchase money security agreement in the form of a real estate mortgage on the following described real estate in Cass County, to wit:

> The West 50 feet of the North 92 feet of Lot 18 in H. Heath's Addition to the City of Logansport, Indiana.
>
> Commonly known as: 809 W. Miami Avenue, Logansport, IN 46947
>
> (the "Subject Property").

The mortgage was recorded in the Office of the Recorder of Cass County, Indiana, on January 23, 2007, as Instrument No. 200700000413, PG 1 of 7 a copy of which is attached hereto as "Exhibit 2."

4.     As a part of this transaction Judith K. Pifer, Deceased executed a Subsidy Repayment Agreement ("Subsidy Agreement"), a copy of which is attached hereto as "Exhibit 3."   By this agreement, the United States agreed to defer a portion of the accruing interest so long as there was no default, but in the event of a default, the deferred interest becomes due as an additional *in rem* charge secured by the mortgage.   There is due under the Subsidy Agreement the sum of $7,443.72.

5.     Plaintiff is the holder of the promissory note, mortgage, and Subsidy Agreement.

6.    Judith K. Pifer is deceased.

7.    Judith K. Pifer, Deceased is in default in repayment of the obligations due to Plaintiff under the terms of the Note and Subsidy Agreement.

8.    The Plaintiff accelerated the indebtedness and made demand for payment in full, and no payment has been received.   All conditions precedent to the assertion of this cause of action against Judith K. Pifer, Deceased have been satisfied and/or have occurred.

9.    Judith K. Pifer, Deceased owes Plaintiff, pursuant to the note and mortgage, the sum of $79,430.34, consisting of $58,278.60 in principal and $13,708.02 in accrued interest as of March 27, 2019, with interest thereafter at the rate of $8.5572 per day to the date of judgment, plus interest credit under the Subsidy Agreement in the sum of $7,443.72.   In addition, the government may incur additional costs and expenses associated with the preservation and sale of the real property, which may become due and owing under the terms of the note and mortgage.

3

## COUNT TWO
## (Foreclosure)

10.   Plaintiff restates and incorporates by reference allegations 1 through 9 as though fully stated herein.

11.   The Heirs and Devisees of Judith K. Pifer, Deceased are made a Defendant to answer as to its interest in the real estate

12.   The mortgage of Plaintiff is prior and paramount to the interest of all other parties to this action.

WHEREFORE, Plaintiff respectfully prays that the Court:

A. Enter judgment *in rem* judgment against the mortgaged real estate in the amount of $79,430.34, together with interest accruing after March 27, 2019 to date of judgment at the rate of $8.5572 per day, plus any such further costs and expenses as may be incurred to the date of sale of the property, and all other costs herein;

B. Enter an order declaring Plaintiff's mortgage to be prior and paramount to the interests of all other parties and determining the amount and priorities of the interests of all parties to the real estate; and an order foreclosing the equity of redemption of defendant in the real estate;

C. Enter an order directing the sale of the property by the U.S.

4

Marshall and application of the proceeds first to the costs of sale, second to payment of the judgment of Plaintiff, with any then-remaining proceeds paid to the Clerk of the Court to be disposed of as the Court shall direct;

D. Issue a Writ of Assistance upon proper Praecipe if the purchaser of the real estate be denied possession; and

E. Award such other and further relief as is just and proper in the premises.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY

By:    *s/Deborah M. Leonard*
       Deborah M. Leonard
       Assistant United States Attorney
       United States Attorney's Office
       Northern District of Indiana
       E. Ross Adair Federal Bldg, U.S. Courthouse
       1300 South Harrison Street, Room 3128
       Fort Wayne, IN 46802-3489
       Tel:   (260) 422-2595
       Fax: (260) 426-1616
       Email: deborah.leonard@usdoj.gov

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

## UNITED STATES DEPARTMENT OF AGRICULTURE
### RURAL HOUSING SERVICE

## PROMISSORY NOTE

**SATISFIED**

Type of Loan  SECTION 502

Loan No. _____

This _____ day of _____ ,20 _____
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

Date: ___01/22___ 20 _07___

809 W Miami Avenue
_____
(Property Address)

Logansport _____  Cass _____  IN _____
(City or Town)                  (County)              (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ _40,319.00_____ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____5.7500____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in __396__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____396_____ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the _22nd_ day of each month beginning on __February 22__ , _2007_ and continuing for _395_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _January 22_ , _2040_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ _227.46_____ . I will make my monthly payment at _the post office address noted on my billing statement_____ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing; the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

**EXHIBIT 1**

Account #

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of___15__days after the date it is due, I will pay a late charge. The amount of the charge will be_____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

*JbP.*

**EXHIBIT 1**

Account #

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA Rural Housing Service, c/o Customer Service Branch</u> <u>Post Office Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal
Borrower Judith K Pifer

_____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 40,319.00 | 01-22-2007 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ 40,319.00 | |

3

**EXHIBIT 1**

200700000413
Filed for Record in
CASS COUNTY, INDIANA
KATHY ADAIR
01-23-2007 At 09:57 am.
MORTGAGE        26.00

Instrument    PG    1 OF    7
200700000413

---

[Space Above This Line For Recording Data]

Form RD 3550-14 IN                                          Form Approved
(Rev. 4/98)                                                 OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

### MORTGAGE FOR INDIANA

THIS MORTGAGE ("Security Instrument") is made on     **January 20, 2007**     , .  [Date]
The mortgagor is     **Judith K. Pifer, single individual**

("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor
agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized
Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively
called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full
debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 01/22/2007 | $40,319.00 | 01/22/2040 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which
may be granted to the Borrower by the Lender pursuant to 42 U.S.C. § 1472(g) or 1490(a). For this purpose, Borrower does
hereby mortgage, grant and convey to Lender the following described property located in          **CASS**
County , Indiana:

[See attached Exhibit A for Legal Description]

which has the address of     **809 W Miami Avenue, Logansport**                    , Indiana  46947
                              [Street]                                [City]                [ZIP]
("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB
control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collec-
tion is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and
maintaining the data needed, and completing and reviewing the collection of information.*

Initials  J. K. P.                                                    Page 1 of 6

USDC IN/ND case 3:19-cv-00249   document 1-2   filed 03/28/19   page 2 of 7

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days

Initials _____

USDC IN/ND case 3:19-cv-00249    document 1-2    filed 03/28/19    page 3 of 7

of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the

Initials  *J.K.P.*

Page 3 of 6

fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Initials    $\mathcal{J}.K.P.$    Page 4 of 6

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21.  Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**22.  SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the Note and any indebtedness to the Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.**  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Lender's option, any other indebtedness of Borrower owing to the Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Lender and its agents may bid and purchase as a stranger and may pay the Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to the Lender, in the order prescribed above.

**24.**  Borrower agrees that the Lender will not be bound by any present or future state laws prescribing any statute of limitations or limiting the conditions which the Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under state law, the benefit of all state laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

**25.  Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐  Condominium Rider          ☐  Planned Unit Development Rider          ☐  Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

*Judith K. Pifer* _____ (Seal)
* Judith K. Pifer                    Borrower

_____ (Seal)
*                                   Borrower

Initials *J.K.P.*

USDC IN/ND case 3:19-cv-00249   document 1-2   filed 03/28/19   page 6 of 7

Instrument        PG     6 OF     7
200700000413

# ACKNOWLEDGMENT

STATE OF INDIANA          )
                          )  } ss:
COUNTY OF  Cass           )

Before me, _Diona D. Settlemyre_____, a Notary Public, this
_22nd_ day of _Jan., 2007_____ and
_Judith K. Piker_____ acknowledged the execution of the annexed mortgage.

_Diona D. Settlemyre_____
                                    Notary Public

_Cass Co., Ind._____
County and State of Residence

My commission expires _12-03-2009_____

*Print, stamp or typewrite the names of the mortgagors and the notary just beneath their signatures.

## Preparer's Statement
The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of:

_John G. Anthrop, Rural Development Manager_         _John S. Anthrop_____
(Name) USDA, Rural Development                        (Signature)
(Address) 1812 Troxel Drive, Suite C-1, Lafayette, IN 47909

"I, Affirm, under the penalties for perjury, that I have taken reasonable care to redact each social security number in this document unless required by law."

_John S. Anthrop_____

Initials _JKP_

Page 6 of 6

USDC IN/ND case 3:19-cv-00249   document 1-2   filed 03/28/19   page 7 of 7

Instrument    PG    7 OF    7
200700000413

## Exhibit A

The West 50 feet of the North 92 feet of Lot 18 in H. Heath's Addition to the City of Logansport, Indiana.

*JkP.*

Form RD 3550-12          **United States Department of Agriculture**          Form Approved
(Rev. 9-06)                      **Rural Housing Service**                    OMB No. 0575-0172

### SUBSIDY REPAYMENT AGREEMENT

Account # 34816531

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but; payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Calculating Original Equity.

For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately furnished under the Self-Help program, an amended agreement using the market value definition for all other transactions as outlined below must be completed.

For all other transactions, the market value is the lower of the:

> Sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable
> OR
> Appraised value as determined at the time of loan approval/obligation.

If the applicant owns the building site free and clear or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value will be the lower of the appraised value or the construction cost plus the value of the site.

Market value of property located at:

809 W Miami Avenue
Logansport, IN   46947               $ 39,500.00

| | | | |
|---|---|---|---|
| Less Prior Liens | $ _____ | Held by | _____ |
| | $ _____ | Held by | _____ |
| Less Subordinate Affordable Housing Products | $ _____ | Held by | _____ |
| | $ _____ | Held by | _____ |
| Less Rural Development Single Family Housing Loans | $ 40,319.00 | | |
| Equals Original Equity (If negative number use "0") | $ 0.00 | | |
| Percent of Original Equity | $ 0.00 | % | |
| (Determined by dividing original equity by the market value) | | | |

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

**EXHIBIT 3**

5.

| months loan outstanding | | | Average interest rate paid | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .44 | .42 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

    Current Market value

LESS

    Original amount of prior liens and subordinate affordable housing products,
    RHS balance,
    Reasonable closing costs,
    Principal reduction at note rate,
    Original equity (see paragraph 3), and
    Capital improvements (see 7 CFR part 3550).

EQUALS

    Appreciation value. (If this is a positive value, continue.)

TIMES

    Percentage in paragraph 4 (if applicable),
    Percentage in paragraph 5, and
    Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS

    Value appreciation subject to recapture. Recapture due equals the lesser of this figure or
    the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower   *Judith K. Pifer* | Date 01-22-2007 |
|---|---|
| Borrower | Date 01-22-2007 |

*Jkp.*

**EXHIBIT 3**

FORM RECD 1944-14                                                    FORM APPROVED
                    UNITED STATES DEPARTMENT OF AGRICULTURE    OMB NO. 0575-0172
                             RURAL HOUSING SERVICE
              PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
              ------------------------------------------------------------
EFFECTIVE: 02/22/07     PAYMENT PLAN: MONTHLY              AGRMT TYPE: NEW

ACCOUNT      NOTE      NOTE       MON INSTLMNT   MONTHLY      MONTHLY
NUMBER       DATE      AMOUNT     AT NOTE RATE   PAYMENT      PAYMENT ASSISTANCE
34816531   01/22/07  40,319.00      227.46       119.58        107.88

1.  THIS AGREEMENT BETWEEN THE UNITED STATES OF AMERICA, ACTING THROUGH THE
    RURAL HOUSING SERVICE (RHS) PURSUANT TO SECTION 521 OF THE HOUSING ACT OF
    1949, (CALLED "THE GOVERNMENT") AND THE BORROWER WHOSE NAME APPEARS BELOW
    (CALLED "THE BORROWER") SUPPLEMENTS PROMISSORY NOTES OR ASSUMPTION
    AGREEMENTS (CALLED "THE NOTE" WHETHER ONE OR MORE) FROM BORROWER TO THE
    GOVERNMENT AS DESCRIBED ABOVE.

2.  ADJUSTED FAMILY INCOME LIMITS FOR CASS COUNTY              AS OF 04/26/06
    VERY LOW:  $19,100   LOW:  $30,500   MODERATE:  $36,000   MEDIAN:  $38,200

3.  HOUSEHOLD AND INCOME INFORMATION  -  TO BE COMPLETED BY THE BORROWER.
    COMPLETE THE FOLLOWING FOR BORROWER, CO-BORROWER, AND ALL ADULT MEMBERS OF
    THE HOUSEHOLD WHO WILL RECEIVE INCOME.

                             PLANNED INCOME
                             NEXT 12 MONTHS

NAME               AGE   WAGES   OTHER    NAMES & ADDRESSES OF SOURCES OF INCOME
------------------ ---   -----   -----    --------------------------------------
JUDITH K PIFER      61       0  10,464   SOC.SEC. AND SEC.8 HUD VOUCHER
                     0       0       0
                     0       0       0
                     0       0       0
NUMBER OF DEPENDENTS (NOT INCLUDING FOSTER CHILDREN) RESIDING IN DWELLING  0
ANNUAL REAL ESTATE TAXES            (DWELLING ONLY)      1,138.76
ANNUAL PROPERTY INSURANCE PREMIUM (DWELLING ONLY)        310.00

SIGNATURES OF BORROWERS: I (WE) CERTIFY THAT HOUSEHOLD AND FINANCIAL INFORMATION
SUBMITTED TO RURAL HOUSING SERVICE IS CORRECT TO THE BEST OF MY (OUR) KNOWLEDGE
AND HAVE READ AND UNDERSTOOD THE REQUIREMENTS AND CONDITIONS ON PAGES 2 AND 3 OF
THIS AGREEMENT.

NOTICE: FAILURE TO DISCLOSE ACCURATE AND TRUTHFUL FINANCIAL INFORMATION MAY
RESULT IN THE TERMINATION OF PROGRAM ASSISTANCE CURRENTLY BEING RECEIVED, AND
THE DENIAL OF FUTURE PROGRAM ASSISTANCE.

WARNING: SECTION 1001 OF TITLE 18, UNITED STATES CODE, PROVIDES: "WHOEVER, IN
ANY MATTER WITHIN THE JURISDICTION OF ANY DEPARTMENT OR AGENCY OF THE UNITED
STATES KNOWINGLY AND WILLFULLY FALSIFIES, CONCEALS OR COVERS UP BY ANY TRICK,
SCHEME, OR DEVICE A MATERIAL FACT, OR MAKES ANY FALSE, FICTITIOUS OR FRAUDULENT
STATEMENTS OR REPRESENTATIONS, OR MAKES OR USES ANY FALSE WRITING OR DOCUMENT
KNOWING THE SAME TO CONTAIN ANY FALSE, FICTITIOUS OR FRAUDULENT STATEMENT OR
ENTRY, SHALL BE FINED UNDER THIS TITLE OR IMPRISONED NOT MORE THAN FIVE YEARS,
OR BOTH."

01/22/2007        Judith K. Pifer
  (DATE)         Judith K. Pifer
                      (BORROWER)                            (CO-BORROWER)

**EXHIBIT 3**

FORM RECD 1944-14                                                    PAGE 2
                    UNITED STATES DEPARTMENT OF AGRICULTURE
                            RURAL HOUSING SERVICE
            PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
            -----------------------------------------------------------
4. INCOME & PAYMENT CALCULATIONS-TO BE COMPLETED BY RHS OFFICIAL OR DESIGNEE.

    TOTAL ANNUAL INCOME  10,464.00
    DEDUCTIONS                0.00
    ADJUSTED ANN INCOME  10,460.00

    ADJUSTED ANNUAL INCOME EQUALS   27.38 % OF MEDIAN INCOME
    EQUIVALENT RATE OF INTEREST IS   1.0000 %

    MONTHLY INSTALLMENT BASED ON EQUIVALENT RATE OF INTEREST     119.58
    MONTHLY REAL ESTATE TAX PAYMENT                              94.90
    MONTHLY PROPERTY INSURANCE PAYMENT                           25.83
    TOTAL PITI BASED ON EQUIVALENT RATE OF INTEREST             240.31

    ADJUSTED INCOME X 22% / 12                                  191.77
    MONTHLY NOTE RATE INSTALLMENT                               227.46
    MONTHLY PAYMENT                                             119.58
    MONTHLY PAYMENT ASSISTANCE                                  107.88


5. SUBJECT TO THE PROVISIONS OF THIS AGREEMENT,  THE BORROWER WILL PAY   119.58
   DOLLARS PER MONTH FOR 24 MONTHS BEGINNING  02/22/07.  THIS AGREEMENT MAY BE
   REVISED OR CANCELED AS PROVIDED BY THE CONDITIONS LISTED ON PAGE 3 OF
   THIS AGREEMENT.

PUBLIC REPORTING BURDEN FOR THIS COLLECTION OF INFORMATION IS ESTIMATED TO
AVERAGE 20 MINUTES PER RESPONSE, INCLUDING THE TIME FOR REVIEWING INSTRUCTIONS,
SEARCHING EXISTING DATA SOURCES, GATHERING AND MAINTAINING THE DATA NEEDED, AND
COMPLETING AND REVIEWING THE COLLECTION OF INFORMATION.  SEND COMMENTS REGARDING
THIS BURDEN ESTIMATE OR ANY OTHER ASPECT OF THE COLLECTION OF INFORMATION,
INCLUDING SUGGESTIONS FOR REDUCING THIS BURDEN, TO DEPARTMENT OF AGRICULTURE,
CLEARANCE OFFICE, OIRM ROOM 404-W, WASHINGTON, D.C. 20250, AND TO THE OFFICE OF
MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (OMB NO. 0575-0059),
WASHINGTON, D.C. 20503.

**EXHIBIT 3**

FORM RECD 1944-14                                                    PAGE 3
            UNITED STATES DEPARTMENT OF AGRICULTURE
                    RURAL HOUSING SERVICE
        PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
        --------------------------------------------------------

6.  DEFERRED PAYMENT CALCULATIONS
    DATE OF INITIAL DEFERRED PAYMENT AGREEMENT: 00/00/00

    ANNUAL NOTE PAYMENT AT 1%     $0.00    TOTAL ANNUAL INCOME X 29%    $0.00
    ANNUAL REAL ESTATE TAXES      $0.00
    ANNUAL PROPERTY INSURANCE     $0.00    MONTHLY DEFERRED PAYMENT     $0.00
    ANNUAL PITI                   $0.00    MONTHLY DEFERRED ASSISTANCE  $0.00

7.  AS REQUESTED BY THE GOVERNMENT, THE BORROWER WILL SUBMIT TO THE GOVERNMENT,
    IN A FORM PRESCRIBED OR APPROVED BY IT, A STATEMENT OF THE BORROWER'S TOTAL
    ANNUAL INCOME AND EXPENSES FOR THE PREVIOUS CALENDAR YEAR OR OTHER
    DESIGNATED PERIODS.

8.  THE GOVERNMENT MAY REVIEW THE BORROWER'S ANNUAL INCOME AND EXPENSES DURING
    THE TERM OF THIS AGREEMENT AND, IN ACCORDANCE WITH ITS REGULATIONS, MAY AT
    ITS DISCRETION INCREASE, DECREASE, OR CANCEL ANY AMOUNT OF PAYMENT
    ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE GRANTED UNDER THIS AGREEMENT.
    THE GOVERNMENT MAY ALSO DETERMINE WHETHER TO OFFER A NEW AGREEMENT FOR THE
    SUCCEEDING YEAR OR OTHER SELECTED PERIOD FOLLOWING THE PERIOD COVERED BY
    THIS AGREEMENT.

9.  AT ITS OPTION, THE GOVERNMENT MAY TERMINATE THIS AGREEMENT AT ANY TIME IT
    DETERMINES THAT:
    A.  THE BORROWER HAS DEFAULTED UNDER ANY TERMS OR CONDITIONS OF THIS
        AGREEMENT, THE NOTE, OR ANY INSTRUMENT SECURING THE BORROWER'S LOAN
        OBLIGATIONS.
    B.  THE BORROWER HAS NEVER OCCUPIED THE DWELLING AND RHS WILL NOT CONTINUE
        THE LOAN.
    C.  THE BORROWER CEASES TO OCCUPY THE DWELLING.
    D.  THE PROPERTY SECURING THE LOAN OBLIGATION HAS BEEN SOLD OR THE TITLE
        TRANSFERRED WITHOUT THE GOVERNMENT'S CONSENT OR APPROVAL.
    E.  THE BORROWER IS NO LONGER ELIGIBLE FOR PAYMENT ASSISTANCE OR DEFERRED
        MORTGAGE ASSISTANCE.

10. DEFERRED PAYMENTS CANNOT BE GRANTED AFTER 15 YEARS FROM THE EFFECTIVE DATE
    OF THE INITIAL PAYMENT ASSISTANCE AGREEMENT.  ALL DEFERRED PAYMENTS
    OUTSTANDING AT THE TIME THE PROPERTY IS SOLD OR TITLE TRANSFERRED ARE
    SUBJECT TO RECAPTURE.

11. THE GOVERNMENT MAY AMEND OR CANCEL THE AGREEMENT AND COLLECT ANY AMOUNT OF
    REDUCTION GRANTED WHICH RESULTED FROM INCOMPLETE OR INACCURATE INFORMATION,
    AN ERROR IN COMPUTATION, OR ANY OTHER REASONS WHICH RESULTED IN PAYMENT
    ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE THAT THE BORROWER WAS NOT
    ENTITLED TO RECEIVE.

12. UPON THE FAILURE OF THE BORROWER TO MAKE THE PAYMENTS PRESCRIBED IN THIS
    AGREEMENT, THE GOVERNMENT, AT ITS OPTION AND SUBJECT TO ITS REGULATIONS, MAY
    DECLARE THE ENTIRE INDEBTEDNESS DUE TO THE GOVERNMENT IMMEDIATELY DUE AND
    PAYABLE.

13. NO TERMS OR CONDITIONS OF THE NOTE OR ANY RELATED SECURITY INSTRUMENT, OTHER
    THAN THE AMOUNT OF PAYMENT OR THE PAYMENT PLAN, SHALL BE AFFECTED BY THIS
    AGREEMENT.

14. THIS AGREEMENT IS SUBJECT TO THE PRESENT REGULATIONS OF RHS AND TO ITS
    FUTURE REGULATIONS NOT INCONSISTENT WITH THE EXPRESS PROVISIONS OF THIS
    AGREEMENT.

15. FOR LOANS APPROVED OR ASSUMED ON OR AFTER OCTOBER 1, 1979, ANY PAYMENT
    ASSISTANCE GRANTED AS A RESULT OF THIS AGREEMENT SHALL BE SUBJECT TO
    RECAPTURE BY THE GOVERNMENT WHEN THE PROPERTY SECURING THE LOAN IS SOLD,
    TITLE TO IT IS TRANSFERRED, OR WHEN IT IS NO LONGER OCCUPIED BY THE
    BORROWER.

16. IF THE DECISION CONTAINED IN THIS FORM RESULTS IN DENIAL, REDUCTION, OR
    CANCELLATION OF RHS ASSISTANCE, THE BORROWER MAY APPEAL THE DECISION AND
    HAVE A HEARING OR MAY REQUEST A REVIEW IN LIEU OF A HEARING.

**EXHIBIT 3**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**(b)**  County of Residence of First Listed Plaintiff

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Deborah M. Leonard, Assistant United States Attorney
USAO - 1300 South Harrison Street, Room 3128
Fort Wayne, IN 46802; Tel: (260) 422-2595

## DEFENDANTS

HHEIRS AND DEVISEES OF JUDITH K. PIFER, DECEASED a/k/a
JUDITH K. PIFER, DECEASED

County of Residence of First Listed Defendant     CASS

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II.  BASIS OF JURISDICTION     (Place an "X" in One Box Only)

- ☒ 1   U.S. Government
      Plaintiff
- ☐ 2   U.S. Government
      Defendant
- ☐ 3   Federal Question
      (U.S. Government Not a Party)
- ☐ 4   Diversity
      (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V.  ORIGIN     (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
  28 USC § 1345fc
Brief description of cause:
Federal Foreclosure

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

03/28/2019

SIGNATURE OF ATTORNEY OF RECORD

s/Deborah M. Leonard

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE